# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES COLEMAN, | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | No. 16-4237 |
| | : | |
| COLORADO TECHNICAL UNIVERSITY, | : | |
| Defendant. | : | |

**MCHUGH, J.**                                                                                                               **JUNE 1, 2017**

## MEMORANDUM

This is an action brought under the Telephone Consumer Protection Act of 1991. Charles Coleman alleges that Colorado Technical University (CTU) repeatedly made automated calls to his cellphone without his consent, a practice prohibited by the Act. Coleman concedes that he initially consented to CTU's calls, but claims he revoked consent. CTU steadfastly maintains he did not, and moves for summary judgment on this basis. Ordinarily, where the key issue is framed in such starkly opposing terms, summary judgment is unwarranted. Here, however, the stalemate is broken by the fact that CTU's request for admission as to whether Coleman ever revoked was never answered. Because I conclude that this request was properly served, the lack of response is, under Federal Rule of Civil Procedure 36(a)(3), deemed an admission that Coleman never revoked. Although in most circumstances I would be reluctant to allow counsel's oversight to be the decisive factor on a dispositive motion, any hesitation is overcome by the record here. CTU's motion for summary judgment will accordingly be granted.

                                                                               \*    \*    \*

CTU is an educational institution that has partnered with third-party websites that help match interested prospective students with the right institution for them. One such prospective

student, Coleman, used one of those websites to inquire about educational opportunities, and was ultimately matched with CTU. Coleman then requested more information, and—it is undisputed here—in the process both gave his cellphone number and clicked a box consenting to receiving automated calls from CTU.

In short order, Coleman received twelve automated calls from CTU over a roughly two-week span. The first seven went unanswered; on the eighth Coleman picked up. While the transcript of this call is unavailable, in his opposition to summary judgment Coleman claims that, before he hung up, he told the person on the other end to stop calling. CTU then made four more calls, all of which went unanswered.

The day after the final call, Coleman called CTU's admissions department. He began by asking, "What is this number?," telling the representative he had just received a call. After the representative explained she was calling because CTU had received his inquiry, Coleman had a 34-minute conversation with her about his interest in CTU's offerings. At no time did Coleman say anything about having revoked his consent to CTU's calls or that he did not want to be called again. Coleman ended the call by telling the representative, "Thank you so much for calling."

Four months passed before CTU called Coleman again. During this call, which lasted only a minute, Coleman said, "I'm not interested at this time." CTU called again a couple weeks later, leading to another brief discussion in which Coleman said, "My plans have changed since I inquired about all that stuff." Coleman also told the representative, "[I]t's not going to happen in the near future. But I do have you guys in mind. You have an interesting school, with some very good curriculums. And as soon as I'm reading to move forward, I'll definitively give you a call." Sometime later, CTU called Coleman one last time. This call lasted six seconds; Coleman answered but said nothing. He then filed this suit, and CTU now moves for summary judgment.

2

* * *

The TCPA was enacted to "protect individual consumers from receiving intrusive and unwanted calls." *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 268 (3d Cir. 2013). As relevant here, the Act creates a private cause of action against a caller that calls a cellphone using an automatic dialing system without the recipient's prior consent. 47 U.S.C. § 227(a)(1)(A)(iii). Though Coleman admits that he initially consented to CTU's calls by checking the box online, he claims—in a late-filed affidavit in opposition to CTU's motion for summary judgment—that he revoked consent three times: the first during CTU's initial series of calls, when he said to stop calling; the second and third later on, when he said he was not interested in CTU at the time.

Both the tone and content of all the calls for which transcripts are available are entirely consistent with CTU's position that none of its calls was unwelcome. So it is hardly surprising that one of the requests for admissions that CTU's counsel served on Coleman's counsel asked Coleman to come right out and admit that he never revoked his initial consent. Coleman's counsel, however, never responded to any of these requests. CTU now contends that all matters in those requests are deemed admitted, with the revocation admission dispositive of this case. On that score, CTU stands on firm legal ground, as it is well-established that "[m]atters deemed admitted due to a party's failure to respond to requests for admissions are 'conclusively established' under [Rule] 36(b), and may support a summary judgment motion." *Sec'y U.S. Dep't of Labor v. Kwasny*, 853 F.3d 87, 91 (3d Cir. 2017) (footnote omitted).

In opposition (and in a separate motion to strike and for a protective order), Coleman's counsel claims that she was not required to respond to CTU's requests for admissions because they were served on her by email without her prior written consent—and thus, under Federal Rule of Civil Procedure 5, not properly served. It is true that Rule 5(b)(2)(E) permits electronic

service on a person only "if the person consented in writing." But, notwithstanding Coleman's counsel's claim to the contrary, she consented to electronic service of discovery requests when she registered as an Electronic Case Filing (ECF) user with this Court. The ECF registration form (https://ecf.paed.uscourts.gov/documents/frm_reg.pdf) provides that an ECF user consents to the following: "In accordance with the provisions of Rule 5(b)(2)(D)[1] of the Federal Rules of Civil Procedure and Section 8 of the ECF Procedures, I agree that service may be given to me by electronic transmission . . . of all documents." Section 8 of the ECF Procedures, titled "Service of Documents by Electronic Means," is set out in Local Rule 5.1.2(8) and contains two provisions relevant here: first, that "registration as an ECF Filing User constitutes agreement to receive and consent to make electronic service of all documents as provided in these ECF Procedures," L.R. 5.1.2(8)(d); and second, that "[i]n civil cases, the provisions of this Section 8 apply to service of documents covered by [Federal] Rule 5(a)," L.R. 5.1.2(8)(g). And Federal Rule 5(a), in turn, which is titled "Service: When Required," encompasses service of "discovery paper[s]." Taken together, the import of these rules is that an attorney who registers for ECF in the Eastern District consents to electronic service of discovery requests.

Coleman's counsel interprets those rules differently, advancing two basic points. First, she relies on a handful of cases where courts have found that electronic service of discovery is not within the realm of documents covered by similar ECF provisions or local rules. *See Bernath v. Seavey*, No. 2:15-cv-358, 2016 WL 7013873, at *4–5 (M.D. Fla. Dec. 1, 2016); *Rocky Mountain Holdings v. Johnson*, No. 5:13-cv-58, 2013 WL 5928550, at *2 (N.D. Fla. Oct. 31,

---

[1] This reference to Rule 5(b)(2)(D) appears to actually be a reference to Rule 5(b)(2)(E). The current version of Rule 5(b)(2)(D) deals only with service on a person with no known address and so does not apply here. Prior to a round of amendments in 2007, however, Rule 5(b)(2)(D) governed electronic service and contained, as relevant here, the same basic written-consent requirement that Rule 5(b)(2)(E) does today. *See* Fed. R. Civ. P. 5(b)(2)(D) (2006).

4

2013); *Idaho Tr. Bank v. BansInsure, Inc.*, No. 1:12-cv-00032, 2013 WL 12156408, at *1 (D. Idaho Apr. 29, 2013).  But those cases are readily distinguishable, because the relevant provisions and rules they involved specifically excluded from the list of documents eligible for electronic service those that are not "filed with the court"—which describes most discovery requests.  This Court's Local Rules, by contrast, have no similar exclusion.  In that regard, of greater relevance here is another case that Coleman's counsel refers to only offhandedly.  *See All. Commc'ns Co-op, Inc. v. Golden W. Telecomms. Coop., Inc.*, Nos. Civ. 06-4211, 06-2023, 06-3025, 07-3003, 06-4144, 2009 WL 512023 (D.S.D. Feb. 27, 2009).  There, in construing a consent-to-electronic-service provision identical in relevant part to those here—one without any exception for discovery—the court squarely rejected the argument that service of discovery requests by email was improper.  *See id.* at *3–4.

      Second, Coleman's counsel claims there is, in fact, a provision in this Court's Local Rules that excludes discovery documents from the ECF electronic-service provision she consented to.  *See* L.R. 5.1.2(16)(B)(7)(a).  That provision is inapplicable here for two reasons.  Initially, it is part of a Local Rule titled "Types of Documents . . . Excluded from Electronic Case Filing."  But the issue before me is not about electronic *filing*, but electronic *service*.  And as was made clear above, the Local Rules provide that ECF users consent to electronic service of all documents covered by Federal Rule 5(a), which specifically includes discovery documents[2] that are not, in the normal course of things, filed with the court.  An even deeper problem with Coleman's counsel's argument, however, is that she fails to recognize Local Rule 5.1.2(16)'s narrow scope:  it provides that certain documents cannot be electronically filed "by an attorney excused from participation from ECF pursuant to Section 3 of these procedures."  That is to say,

---

      [2] *See* Fed. R. Civ. P. 5(a)(1)(C).  It also bears mention that Rule 36, which authorizes requests for admissions, falls within the Federal Rules' "Title V.  Disclosures and Discovery."

5

the exclusions listed in Rule 5.1.2(16) only apply where an attorney is *not* registered for ECF—something decidedly not the case here.

I therefore conclude that CTU's requests for admissions were properly served, and because of the lack of response, the matters set forth in them, including that Coleman never revoked his consent to receive CTU's calls, are deemed admitted and conclusively established for purposes of CTU's motion for summary judgment.

\* \* \*

Notably, Coleman has not moved under Federal Rule 36(b) for leave to withdraw his admission that he never revoked consent. Even if he had, however, I would not be inclined to exercise the broad discretion I have under Rule 36(b) to grant relief, because the decision I reach here—to grant CTU summary judgment based on that admission—is not inconsistent with the general principle that cases should be decided on their merits.

On summary judgment, an issue of fact is only genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In keeping with this principle, the Third Circuit has held that, in deciding whether to permit a party seeking to avoid an adverse summary-judgment ruling to withdraw an admission under Rule 36(b), a district court may properly consider whether there is "contemporaneous" and "compelling" evidence that warrants withdrawal. *AIRCO Indus. Gases, Inc. Div. of the BOC Grp., Inc. v. Teamsters Health and Welfare Pension Fund of Phila. & Vicinity*, 850 F.2d 1028, 1036 (3d Cir. 1988) (Higginbotham, J.).

Here, the record shows that there is a genuine issue of fact only in the most contrived sense, because the objective contemporaneous evidence of the phone conversations between CTU's representatives and Coleman strongly supports CTU's position that Coleman never

revoked his consent. Coleman's one piece of evidence to the contrary—his late-filed affidavit to the effect that CTU's calls persisted over his protests—is almost impossible to reconcile with the available records of those calls, which show, at bottom, a series of amicable exchanges between CTU and a potentially interested customer. Stated simply, because Coleman's admission is entirely consistent with all of the other record evidence, so relief under Rule 36(b) would be unjustified.

\* \* \*

Entering summary judgment based on a party's failure to respond to requests for admissions may be "unusual," but it is nonetheless proper. *Petrunich v. Sun Bldg. Sys., Inc.*, No. 3:CV-04-2234, 2006 WL 2788208, at \*1 (M.D. Pa. Sept. 26, 2006) (Vanaskie, J.). The decisive fact established by the lack of response to CTU's requests for admissions—that Coleman never revoked consent—entitles CTU to summary judgment on all claims.

An appropriate order follows.

       /s/ Gerald Austin McHugh
United States District Judge